[Sac. No. 880. In Bank.—June 5, 1902.]

MINNIE R. POWERS, Respondent, v. BANK OF ORO-VILLE, Appellant.

ACTION TO QUIET TITLE—PRESCRIPTIVE TITLE OF PLAINTIFF—BOUNDARY OF TOWN LOT—FENCE—ADVERSE POSSESSION.—The plaintiff in an action to quiet title, involving a small strip of land claimed by the defendant as overlapping the town lot possessed by the plaintiff, and as being included in the boundary of the defendant's lot, is entitled to recover upon proof of a prescriptive title by adverse possession in the plaintiff and her grantors, under a fencing, and continuous possession of the lot including the strip, and the payment of all taxes thereon for more than five years by the plaintiff and her grantor under an adverse claim of right.

ID.—UNCERTAINTY IN DISTANCE FROM STREET—CONTROL OF MONUMENTS —BOUNDARY BY PLAINTIFF'S LOT.—Where the call of both lots in

distance from the line of a street is rendered uncertain by difficulty in ascertaining the true line of the street, some surveyors sustaining plaintiff's line, and others the boundary claimed by the defendant, but there is no uncertainty as to the possession given to plaintiff's grantor by the original owner of both lots, and as to the fence which such grantor was then permitted to erect and maintain, and the subsequent grant by the original owner of the remainder of the land to defendant's grantor was bounded by plaintiff's lot, which was then fenced, such boundary must be deemed a monument which will control the call tor distance in the description of the defendant's lot.

Id.—Admission of Irrelevant Evidence—Harmless Ruling.—Where the judgment for the plaintiff is sustained by a finding of adverse possession and prescriptive title in the plaintiff, the admission of irrelevant evidence for the plaintiff as to the location of certain buildings not in dispute is harmless, and not ground of reversal.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. John C. Gray, Judge.

The facts are stated in the opinion.

John Gale, and R. E. Robinson, for Appellant.

J. M. McGee, for Respondent.

CHIPMAN, C.—Action to quiet title. Plaintiff had judgment, from which and from the order denying its motion for a new trial defendant appeals.

The premises in controversy are part of lot 1, block 21, in the town of Oroville, being forty-three feet eleven inches thereof, lying on the westerly side of Myers Street. Defendant claims the northerly fifty-seven feet and five inches of this lot, overlapping the land claimed by plaintiff two feet and ten inches, which latter strip alone is in controversy.

The court found the following facts: That "on March 1, 1888, one James C. Gray was the owner of all of lot 1 except a strip thirteen and one-fourth feet wide on the south side thereof, and on said day sold to E. A. Halstead, and conveyed by deed, what was then known as the Brown House property (which included the land in dispute), and which was then inclosed by a substantial fence, which said fence has been maintained from the date of said sale to the present time"; that Halstead entered into possession of said lot, culti-

vated and improved the same, from the date of his purchase
to the date of his sale of the premises to plaintiff herein, and
said plaintiff and her grantor have paid all taxes, state,
county, and otherwise, levied and assessed upon said land,
since said first day of March, 1888, to the commencement of
the action; "that the possession of plaintiff and her grantor
since said March 1, 1888, to the commencement of the action
has been open, notorious, peaceable, adverse to all the world
and under claim of right;" that Halstead conveyed by deed
to plaintiff the land in controversy on June 3, 1897, who
immediately took possession thereof with her family, and has
maintained the same exclusively to the commencement of the
action; that the land and premises sold by Gray and conveyed
by deed on March 1, 1888, to Halstead, "contained, among
other lands, that which is the subject of dispute, and after said
sale said Gray never made any claim to any of the lands con-
tained in the description set out in said deed of conveyance,
nor to any of the lands contained within the Brown House
lot, being the land inclosed, of which the land in dispute is a
part." The conclusion of law was, that plaintiff is the owner
of the land described in the complaint, and is entitled to have
his title to the same quieted, and judgment was accordingly
so entered.

1. Appellant contends that the evidence is insufficient to
support the findings. The controversy arose out of the survey
to establish the southerly line of Bird Street, which bounds
lot 1, block 21, on the north. Plaintiff's deed has for a starting-
point of the description a point on the westerly line of Myers
Street fifty-seven and five-twelfths feet southerly from the
southwest corner of Bird and Myers streets. Surveyor Jasper,
taking as his initial point what he regarded as the correct one
from which to establish the boundaries of plaintiff's lot, came
to the conclusion that her lot lies within the inclosure as it
has existed and been occupied for many years—certainly since
1888. Surveyor McCoy, taking a different initial point, lo-
cated the southerly line of Bird Street so that the calls of
plaintiff's deed and the calls of defendant's deed would ap-
parently show a strip of land within plaintiff's inclosure
next to defendant's land of the width now in controversy. In
a written opinion of the court, printed in respondent's brief,
the learned trial judge said: "I am of the opinion, under the

testimony, that the southwesterly corner of Bird and Myers streets is a floating place, since of four persons, Edmunds, Gray, Jasper, and McCoy, who have tried to locate it, no two fix it in the same place.'' We think, however, it is not necessary for the support of sufficient findings to support the judgment to express any opinion on this point. There is evidence that when Gray sold the premises in question to Halstead, in 1888, the land was inclosed by a substantial fence, and a dwelling-house was erected on the land, which was occupied as a residence, and the property was familiarly known as the Brown House lot, by reason of the house and fence having been painted brown color. The inclosure was the same then as now, and between the fences the land not occupied by the house was highly cultivated and beautified with ornamental shrubbery, flowers, and fruit-trees, some of which were planted close to the north line of the fence, next to defendant's lot. There is evidence that when Gray conveyed to Halstead, and put the latter in possession, the parties understood that the land granted was the lot inclosed by these fences. Gray then owned the part lying north, now claimed by defendant, and continued to be the owner for about four and a half years, during which time he made no claim to any portion of the Brown House lot as taken possession of by Halstead under his deed. Gray conveyed the north part of lot 1 to one Lillis, defendant's grantor, in 1892, by a description commencing at the southwesterly corner of Bird and Myers streets running thence southerly along the westerly line of Myers Street fifty-seven and five-twelfths feet *"to the northerly line of the Halstead lot."* The trial court held, we think rightly, that the reference to the "Halstead lot" must be taken as referring to a monument and would govern as against the distance call. Gray must have had in his mind the lot as he had conveyed to Halstead and to which he had given Halstead possession. The "Halstead lot" was the land inclosed and now claimed by plaintiff. Neither defendant's grantor, Lillis, nor defendant ever questioned the right of plaintiff to the very land she occupied until about the time the action was commenced. It is admitted that all taxes on the Brown House lot, fronting on Myers Street forty-three feet eleven inches, were paid by plaintiff and her grantors from the time Gray conveyed to Halstead to the present time. There was evidence that plain-

tiff's claim to the land in question, and that of her predecessors in estate, was open, notorious, peaceable, and undisputed, and with the knowledge of defendant, for all these years. It would be difficult to show a stronger case of possession adverse to all the world. There is nothing in the evidence to warrant defendant's contention that the location of the north line of plaintiff's lot was a matter of mutual doubt and mistake, and hence plaintiff was not holding adversely to defendant. There was no mistake or doubt in the mind of Halstead or plaintiff, or Gray, for that matter, as to the boundaries of the lot intended to be conveyed by Gray to Halstead. Regardless, therefore, of the true location of the southwest corner of Bird and Myers streets, which the lower court considered as still unsettled, the claim of adverse right is sufficiently shown and the judgment may rest on the findings as to this adverse claim.

2. Appellant contends that the court erred in admitting certain testimony as to the location of certain buildings on the land adjoining the lot in question on the south, the ground of objection being that it was an attempt to explain the description in the deeds to lot 1, and that the location of these buildings was not in dispute. The court seemed to regard the evidence as irrelevant, but admitted it. We cannot see that it had much, if any, bearing on the case one way or the other; and on the issue of adverse possession it had not the slightest weight. Conceding that it was incompetent on the issue as to the description given in the deeds, for the reason urged by appellant, it was harmless, since the judgment may rest wholly on the finding of adverse possession.

The judgment and order should be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Henshaw, J., Garoutte, J., Van Dyke, J., Harrison, J.